IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2016 MAR 28 AM 10: 13

CLERK. US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                DEPUTY

RICHARD WAYNE SPENCER,           §
    Plaintiff,                   §
v.                               §        NO. EP-15-CV-0096-DCG
                                 §        (-LS by consent)
                                 §
CAROLYN W. COLVIN,[1]            §
Acting Commissioner of Social Security  §
Administration,                  §
    Defendant.                   §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was referred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), dated October 3, 2014, denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act.[2] For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff claims in his brief that the final decision of the defendant Commissioner denied disability benefits under Title II of the Act and supplemental security income under Title XVI of the Act. However, both of the hearing decisions by the administrative law judges denying benefits relate only to disability benefits under Title II, referencing sections 216(i) and 223(d) of the Social Security Act and regulatory provisions under 20 C.F.R. Pt. 404. Also, the appointments of counsel, the initial decisions denying benefits, and the decisions on reconsideration relate only to the application for disability benefits under Title II. Although the record does contain an application for supplemental security income under Title XVI, this Court did not locate any other documentation in the record regarding that application.

## I. BACKGROUND

Plaintiff was born in January 1966, completed a high school degree or its equivalency, and can communicate in English. (R: 25, 229, 278, 1636)[3][4] After obtaining a bachelor's degree in social psychology, he began to pursue a masters degree in social work but withdrew because of problems with concentration and focus. (R:30, 1636, 1659) He has past work experience in the military service as an administrative specialist, and as a medic. (R:51, 52) Plaintiff discontinued working in April 2008, when he retired from military with over 21 years of service. (R:25, 229)

## II. ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

Plaintiff contends that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence because she failed to properly consider Plaintiff's physical and mental impairments. Plaintiff contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. PROCEDURAL HISTORY

In June 2010, Plaintiff filed an application for DIB benefits, with an alleged onset date of

---

[3]Reference to the Administrative Record, contained in Docket Entry Number 13, is designated by an "R" followed by the page number(s).

[4]Plaintiff testified at the administrative hearing that he completed the 12th grade. However, in Progress Notes for a Military Trauma Treatment Intake Assessment, he indicated that he completed a High School Equivalency (G.E.D.). (R:25, 1636)

April 30, 2008. (R:85, 229) His application was denied initially and upon reconsideration. (R:59, 61) Upon Plaintiff's written request for a hearing, an administrative hearing was held on May 24, 2012. (R:10-20) Administrative Law Judge W. Thomas Bundy issued a decision on June 25, 2012, finding Plaintiff not disabled and denying benefits. (R:65-72) On June 7, 2013, the Appeals Council vacated the hearing decision and remanded the case for further proceedings and evaluation. (R:78-80) On remand, another hearing was held on September 3, 2014. (R: 23-57) Administrative Law Judge Myriam Fernandez Rice issued a decision on October 3, 2014, finding Plaintiff not disabled from his alleged onset date through the date he was last insured, December 31, 2013. The Appeals Council denied Plaintiff's request for review on February 4, 2015. (R:1-6)

Plaintiff filed the instant cause on April 1, 2015. [ECF No. 1] Defendant filed an answer and transcript of the administrative proceedings on May 22, 2015. [ECF Nos. 10, 13] Plaintiff filed a brief in support of his claims on August 24, 2015. [ECF No. 21] On September 23, 2015, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 22] This case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 23]

## IV. DISCUSSION

### A. STANDARD OF REVIEW

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where

3

there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## B. EVALUATION PROCESS

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520. However, if the claimant has shown he cannot perform his previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If the Commissioner establishes other potential employment, the burden shifts back to the claimant to prove he is unable to perform the alternative work. *Id.*

A finding that a claimant is disabled or not disabled at any point in the process is conclusive

4

and terminates the Commissioner's analysis. *Leggett*, 67 F.3d at 564. The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commission made an error of law. *Id.*

### C. THE ALJ'S DECISION

At the first step of the sequential disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 30, 2008, the alleged onset date, through December 31, 2013, the date last insured. (R:88) At step two, the ALJ found that Plaintiff had severe impairments of: post-traumatic stress disorder (PTSD); degenerative disc disease of the lumbar spine; rotator cuff tear, status-post arthroscopy with degenerative arthritis of the left shoulder; degenerative joint disease of the bilateral knees with a history of knee surgery; obesity; and obstructive sleep apnea. (R:88) However, at step three, she found that none of his impairments met or equaled the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:89) She assessed Plaintiff's mental limitations and determined that he had mild limitations in his activities of daily living and social functioning, moderate limitation in the functional area of concentration, persistence, or pace, and had no episodes of decompensation of extended duration.

The ALJ next determined that Plaintiff retained the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).[5] He could lift and carry up to 10 pounds, stand or walk for up

---

[5]Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Since being on one's feet is required "occasionally" (meaning occurring very little up to one-third of the time) at the sedentary level of exertion, periods of standing or walking should generally total no more than two hours in an 8-hour

to two hours, and sit for up to six hours of an eight-hour workday. He could climb ramps and stairs, stoop, kneel, crouch, and crawl occasionally. He could not climb ladders, ropes, or scaffolds, and should avoid even moderate exposure to unprotected heights and moving machinery. Further, he could understand, remember, and execute simple instructions and tasks, and maintain concentration, persistence and pace for two hours at a time. (R:91)

At step four, based upon Vocational Expert ("VE") testimony, the ALJ determined that an individual with Plaintiff's RFC could not perform Plaintiff's past relevant work as an administrative specialist and as a medic.[6] (R:95-96) The demands of his past work as he performed it exceeded his current RFC. At the final step, the ALJ considered the VE testimony, and found that Plaintiff could perform other work such as a charge account clerk, a jewelry sorter, and a mail sorter, all sedentary and unskilled level work.[7] (R:96-97) The ALJ concluded that Plaintiff was not disabled from his alleged onset date through the date of the ALJ's decision. (R:97)

## D. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff asserts that the ALJ erred in determining his residual functional capacity by failing to include the limitations from his obesity, his back, shoulder, and knee impairments, and his mental impairment. He claims that he is more limited than assessed by the ALJ in the ability to sit, lift, and reach, and in his ability to concentrate and focus. The Defendant responds that substantial evidence

---

workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Social Security Ruling (SSR) 83-10.

[6]See U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT") §§ 169.167-010 (Administrative Assistant, sedentary, skilled), 079.362-010 (Medical Assistant, light, skilled).

[7]See id. §§ 205.367-014 (Charge Account Clerk, sedentary, unskilled), 700.687-062 (Preparer, sedentary, unskilled), 209.587-010 (Addresser, sedentary, unskilled).

supports the decision of the ALJ and that the ALJ appropriately considered the objective medical evidence as well as Plaintiff's activities during the relevant period to determine any functional limitations.

Residual functional capacity ("RFC") is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the plaintiff's abilities despite his physical and mental limitations. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *see also* 20 C.F.R. §404.1545(a). The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

Further, the mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). His own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

The objective medical evidence verifies the existence of Plaintiff's impairments but not the limitations he alleges. An MRI of Plaintiff's left shoulder taken in February 2009 showed a rotator cuff tear. (R:1361) Plaintiff had arthroscopic surgery on his left shoulder in May 2009. (R:1241, 1325) Images taken of Plaintiff's left shoulder in December 2010 showed joint osteoarthropathy (R:930-31), and later in October 2011 revealed impingement. (R:960) An MRI examination of the

7

right shoulder taken in October 2013 showed rotator cuff tendinosis, impingement, and mild degenerative changes, but no rotator cuff tear. (R:1667) He had surgery on his right shoulder in April 2014. (R:2090)

Plaintiff underwent left knee ACL reconstruction in 2005. (R:2090) Subsequent MRI examination results of the left knee in February 2009 showed osteoarthritis and suggested osteonecrosis. (R:1358) Plaintiff underwent right knee arthroscopy for a torn meniscus in December 2012, and another arthroscopy of the right knee in September 2014. (R:1746, 2090)

A lumbar spine MRI conducted on November 18, 2009, showed degenerative disc disease, mild to moderate neural foraminal narrowing, and minimal grade-1 degenerative anterolisthesis. (R:1010-11, 1128-29, 1432) An x-ray examination of the lumbar spine on September 1, 2010, revealed spondylosis with disc space narrowing, and facet arthropathy. (R:915) Imaging results of the cervical spine from November 2013 showed degenerative disc changes. (R:1647-48, 1960) Bilateral hip x-rays performed in January 2010 were normal. (R:670-71)

On June 17, 2010, Plaintiff presented for a compensation and pension evaluation. (R:1081-86) Upon physical examination, Plaintiff's straight-leg test was negative and motor strength was 5/5 in his lower extremities. His gait was nonantalgic, and without ambulatory aids. Upon review of the exam results and objective test results, the examiner determined that Plaintiff had no functional limitations in standing or walking, and found no evidence of abnormal weight bearing, weakness, or instability.

On September 3, 2010, Dr. Robert P. May performed a consultative examination of Plaintiff. (R:917-19) He noted that although Plaintiff has been diagnosed with PTSD, he was not on medication. He reported that Plaintiff was studying psychology, living with his daughter, and did

housework. Dr. May noted that after having left shoulder surgery, Plaintiff has had physical therapy and currently had full range of motion. Plaintiff also had full range of motion in his left knee, despite past knee surgeries. Plaintiff was able to move around fairly well and had a normal gait. An x-ray of the lumbar spine showed arthritic changes. Dr. May assessed Plaintiff with chronic lumbosacral strain, mild to moderate. He opined that Plaintiff could not stand for more than two hours, could not lift more than 20 pounds, and had limited bending and stooping. Overall, he concluded that Plaintiff could not perform his past work, but would be able to handle relatively sedentary work.

Dr. James Wright, a state agency medical consultant, completed Plaintiff's Physical Residual Functional Capacity Assessment on September 29, 2010. (R:921-28) He found that Plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently; could stand or walk about 6 hours in an 8-hour workday; could frequently balance; occasionally climb, stoop, kneel, crouch, and crawl; and occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. Upon review of the evidence, he determined that Plaintiff's complaints were only partially supported. Dr. Wright's assessment was affirmed by Dr. Roberta Herman, another state agency medical consultant, on January 27, 2011. (R:957)

At a physical therapy appointment in January 2013, Plaintiff had no gait deviations, was able to do all exercises prescribed without issue, and showed no functional deficits. (R:1746-48) Plaintiff reported that his right knee did not affect his functioning. The therapist recommended non-weight bearing cardio exercises, including using a bike, an elliptical machine, or swimming, and doing stretching and squats. No barriers to rehabilitation were expected.

The record also contains a medical source statement from treating physician Dr. Laurette Chang, dated November 7, 2014. (R:2085-88, 2090-91) Dr. Chang determined that Plaintiff could

lift ten pounds, stand or walk less than two hours due to the use of a cane, and must alternate sitting and standing. The physician further determined that Plaintiff had limited reaching, handling, fingering, and feeling. Also, temperature extremes would affect Plaintiff's joint pain and noise would affect his PTSD.

At the administrative hearing in September 2014, Plaintiff testified that he has had shoulder surgeries, knee surgeries, wears a back brace and knee braces, and walks with the assistance of a cane at times. (R:26-28) He further testified that he was taking college classes to become a social worker, and drove himself to class, but dropped out because he had trouble focusing and concentrating. (R:30) He attended church on Sundays, drove to appointments, read, and watched television. (R:33-35) Plaintiff testified that he went to the gym every morning to ride a recumbent bike for 15 to 20 minutes and to do stretching exercises. (R:34, 38) He stated that he received both a VA pension and military retirement. (R: 29) When asked about his abilities, he responded that he could walk about two blocks, had to shift his weight for sitting and standing, and could lift about 25 to 30 pounds, but not overhead. (R:38-40) He could shower, dress, and prepare simple meals such as soups and crockpot meals. (R:39-40) When asked why he could not work, he replied that his medications interfered with his concentration, and his back brace affected his breathing. (R:41) Also, he stated that he has to lie down about six times a day for 45 minutes at a time. (R:45, 46)

Progress notes dated January 11, 2010, indicate that Plaintiff was released back to work after his left shoulder surgery with a lifting restriction of no more than five pounds. (R:1128) On the same day, Dr. Diaz-Pagan released Plaintiff back to work with a lifting restriction of no more than ten pounds. (R:1240) On June 10, 2011, Dr. Diaz-Pagan wrote a letter stating that Plaintiff was not able to work from May 20, 2009, the date of surgery, to October 20, 2010 (R:1325), but this letter

conflicts with Dr. Diaz-Pagan's January 2010 letter releasing Plaintiff back to work.

The record further reflects that Plaintiff was released without limitations after clinical evaluations in November 2009 and January 2010. (R:376, 379) In January 2013, after performing physical therapy exercises without issue, Plaintiff was found to have no functional deficits. (R:1747) In November 2013, at a neurology consult, Plaintiff was found to have strength of 5/5 in his upper and lower extremities and normal fine finger movements. (R:1626)

Regarding Plaintiff's mental status, he was evaluated in November 2013 for PTSD and depression.[8] (R:1610-14, 1660) His thought processes were logical and goal-directed. Although his mood was anxious, there were no indications of perceptual disturbances or motor disturbances. His remote and recent memory appeared intact. Plaintiff reported feeling stressed with school. He also felt significant levels of stress at home with his daughter and grandson living with him, stating that he was taking care of them and other family members. He was assessed with PTSD and was provided a scheduled treatment plan for cognitive, behavioral, and supportive therapy, with goals

---

[8] Plaintiff's Global Assessment of Functioning (GAF) score was rated as a 68 in October 2013. (R:1660) A GAF of 61-70 indicates some mild symptoms or mild difficulty in social, occupational, or school functioning, but generally functioning pretty well. *See* Am. Psychiatric Ass'n: DIAGNOSTIC and STATISTICAL MANUAL of MENTAL DISORDERS, Text Revision 32-34 (4th ed. 2000) ("DSM-IV-TR"). A rating of 71-80 indicates that if symptoms are present, they are transient with expectable reactions to psychosocial stressors, with no more than slight impairment in social, occupational, or school functioning. *Id.* However, it is noted that in the updated version of the DSM, the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* Am. Psychiatric Ass'n: DIAGNOSTIC and STATISTICAL MANUAL of MENTAL DISORDERS 16 (5th ed. 2013) ("DSM-V"). To clarify its position regarding the use of the GAF scale, the Social Security Administration released an Administrative Message ("AM") stating that it would continue to consider GAF evidence in medical records, but emphasized that GAF ratings are neither standardized nor based on normative data. *See* Social Security Administrative Message, AM-13066 (effective July 22, 2013). According to the AM, GAF scores should be treated as opinion evidence. *See Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262 at *3 (N.D. Tex. Nov. 5, 2015)(citing to SSA AM-13066 and attaching it as an exhibit).

related to stress management, frustration tolerance, and concentration and focus.

Based upon review of the testimony and record evidence, the ALJ found that Plaintiff's alleged limitations were not entirely credible and not supported by the evidence. (R:95) The evidence demonstrates that during the relevant period, from his onset date to date last insured, Plaintiff was able to perform light chores, prepare simple meals, drive, and engage in social activities. He attended college full-time, with a 3.35 grade point average, completed a bachelor's degree, and started a masters program. (R:13-14, 1603, 1659) He also regularly went to the gym to exercise, including riding an exercise bike, using an elliptical machine, jumping rope, and doing squats, leg presses, and stretching exercises. (R:1747-48) In December 2013, Plaintiff even made a request for a VA physician to complete a "Medical Examination Report for Commercial Driver Fitness Determination." (R:1594)

The ALJ's RFC determination of sedentary level work is consistent with the findings of the physicians of record. By limiting Plaintiff to a reduced level of sedentary work, the ALJ sufficiently accommodated Plaintiff's physical and mental impairments and limitations.

In making her determinations, the ALJ assessed Plaintiff's credibility and subjective complaints. It was within the ALJ's broad discretion to weigh the evidence and make credibility determinations. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). The ALJ considered the medical evidence as well as Plaintiff's testimony. Based upon her review of the evidence, the ALJ determined that Plaintiff was not as limited as he claimed. Such decision was within the ALJ's discretion and is supported by the evidence.

Accordingly, based upon a review of the evidence, the Court finds that the ALJ's RFC determination comports with relevant legal standards and is supported by substantial evidence.

Therefore, Plaintiff's assertions of error are without merit.

## V. CONCLUSION

Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

SIGNED and ENTERED on March 28, 2016.

LEON SCHYDLOWER
United States Magistrate Judge

13